# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dianne Prosseda

## DEFENDANTS
The Windham Group
Windhand Injury Management Group

**(b)** County of Residence of First Listed Plaintiff: Philadelphia County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Manchester, NH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel S. Orlow, Esq., Console Mattiacci Law,
110 Marter Ave, Suite 502, Moorestown, NJ 08057

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**: 110 Insurance; 120 Marine; 130 Miller Act; 140 Negotiable Instrument; 150 Recovery of Overpayment & Enforcement of Judgment; 151 Medicare Act; 152 Recovery of Defaulted Student Loans (Excludes Veterans); 153 Recovery of Overpayment of Veteran's Benefits; 160 Stockholders' Suits; 190 Other Contract; 195 Contract Product Liability; 196 Franchise

**TORTS – PERSONAL INJURY**: 310 Airplane; 315 Airplane Product Liability; 320 Assault, Libel & Slander; 330 Federal Employers' Liability; 340 Marine; 345 Marine Product Liability; 350 Motor Vehicle; 355 Motor Vehicle Product Liability; 360 Other Personal Injury; 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**: 365 Personal Injury - Product Liability; 367 Health Care/Pharmaceutical Personal Injury Product Liability; 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**: 370 Other Fraud; 371 Truth in Lending; 380 Other Personal Property Damage; 385 Property Damage Product Liability

**REAL PROPERTY**: 210 Land Condemnation; 220 Foreclosure; 230 Rent Lease & Ejectment; 240 Torts to Land; 245 Tort Product Liability; 290 All Other Real Property

**CIVIL RIGHTS**: 440 Other Civil Rights; 441 Voting; [x] 442 Employment; 443 Housing/Accommodations; 445 Amer. w/Disabilities - Employment; 446 Amer. w/Disabilities - Other; 448 Education

**PRISONER PETITIONS – Habeas Corpus**: 463 Alien Detainee; 510 Motions to Vacate Sentence; 530 General; 535 Death Penalty; **Other**: 540 Mandamus & Other; 550 Civil Rights; 555 Prison Condition; 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**: 625 Drug Related Seizure of Property 21 USC 881; 690 Other

**LABOR**: 710 Fair Labor Standards Act; 720 Labor/Management Relations; 740 Railway Labor Act; 751 Family and Medical Leave Act; 790 Other Labor Litigation; 791 Employee Retirement Income Security Act

**IMMIGRATION**: 462 Naturalization Application; 465 Other Immigration Actions

**BANKRUPTCY**: 422 Appeal 28 USC 158; 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**: 820 Copyrights; 830 Patent; 835 Patent - Abbreviated New Drug Application; 840 Trademark; 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**: 861 HIA (1395ff); 862 Black Lung (923); 863 DIWC/DIWW (405(g)); 864 SSID Title XVI; 865 RSI (405(g))

**FEDERAL TAX SUITS**: 870 Taxes (U.S. Plaintiff or Defendant); 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**: 375 False Claims Act; 376 Qui Tam (31 USC 3729(a)); 400 State Reapportionment; 410 Antitrust; 430 Banks and Banking; 450 Commerce; 460 Deportation; 470 Racketeer Influenced and Corrupt Organizations; 480 Consumer Credit (15 USC 1681 or 1692); 485 Telephone Consumer Protection Act; 490 Cable/Sat TV; 850 Securities/Commodities/Exchange; 890 Other Statutory Actions; 891 Agricultural Acts; 893 Environmental Matters; 895 Freedom of Information Act; 896 Arbitration; 899 Administrative Procedure Act/Review or Appeal of Agency Decision; 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e et seq.; 42 US.C. § 12101 et seq.; N.J.S.A. 10:5-1, et seq.
Brief description of cause:
Plaintiff was discriminated against because of her disability.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- **DEMAND $** in excess of $75,000
- CHECK YES only if demanded in complaint: **JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE: 12/13/2023
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DIANNE PROSSEDA** <br> Philadelphia, PA <br><br> **Plaintiff,** <br><br> v. <br><br> **THE WINDHAM GROUP** <br> Manchester, NH <br><br> **WINDHAM INJURY MANAGEMENTGROUP** <br> Manchester, NH <br><br> **Defendants** | CIVIL ACTION NO. 23-23069 <br><br><br><br> **JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

**I.   INTRODUCTION**

Plaintiff, Dianne Prosseda, brings this action against her former employer, Windham Injury Management Group, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("LAD").

Plaintiff, a Nurse Case Manager, was subjected to on-going sexual harassment from a patient that Defendants had assigned her to cover. When Plaintiff complained of the repeated sexual harassment from this patient and requested to be removed from the account, Defendants failed to take appropriate remedial action. On the contrary, Plaintiff was asked by her direct supervisor what she wore to her visits with this patient. After Plaintiff continued to complain about the harassment and requested a workplace accommodation related to her status as an incomplete

paraplegic, she was placed on a 90-day performance improvement plan ("PIP") for alleged poor performance. Shortly thereafter (approximately five days into the PIP) she was issued a final written warning and then terminated only eight days thereafter.

Defendants discriminated and retaliated against Plaintiff in violation of Title VII, the ADA, and the LAD. Plaintiff seeks damages, including back-pay, front-pay, compensatory, punitive, attorneys' fees and costs, and all other relief that this Court deems appropriate.

## II.     PARTIES

1.     Plaintiff Dianne Prosseda is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Swarthmore, Pennsylvania.

2.     Defendant The Windham Group is organized under the laws of New Hampshire and maintains a principal place of business in Manchester, New Hampshire.

3.     Defendant Windham Injury Management Group is organized under the laws of New Hampshire and maintains a principal place of business in Manchester, New Hampshire.

4.     At all relevant times, Defendants have each been engaged in an industry affecting interstate commerce and have acted as single and/or integrated "employers" of Plaintiff within the meaning of the statutes which form the basis of this matter.

5.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

6.     At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

## III.    JURISDICTION AND VENUE

7.     The causes of action set forth in this Complaint arise under Title VII, the ADA, and

NJLAD.

8. Defendant The Windham Group is a citizen of New Hampshire within the meaning of 28 U.S.C. § 1332.

9. Defendant Windham Injury Management Group is a citizen of New Hampshire within the meaning of 28 U.S.C. § 1332.

10. Plaintiff is a citizen of Pennsylvania within the meaning of 28 U.S.C. § 1332.

11. There exists complete diversity of citizenship between the parties to this matter and the amount in controversy exceeds $75,000.00.

12. This District Court has jurisdiction over all Counts pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of Pennsylvania and Defendants are not.

13. The District Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367.

14. Venue is proper under 28 U.S.C. § 1391(b).

15. On or about March 29, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), complaining of the acts of discrimination alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

16. On September 15, 2023, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for her EEOC Charge. Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

17. Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

## IV.     FACTUAL ALLEGATIONS

18.     Plaintiff was hired by Defendants on or about December 27, 2017.

19.     Plaintiff held the position of Nurse Case Manager.

20.     Plaintiff is an incomplete paraplegic, meaning that she is paralyzed from the waist down except for her left leg.

21.     Among many other restrictions, Plaintiff's disability restricts her ability to drive in standard automobiles that require the use of the right leg to operate floor pedals.

22.     Plaintiff's disability also restricts her ability to engage in a multitude of physical activities, such as walking, running, jumping, and driving for prolonged periods of time.

23.     In or about April 2022, Plaintiff began reporting to Titeca Walker, Mid-Atlantic Clinical Supervisor.

24.     Walker reported to Jessica Roeske, Clinal Supervisor.

25.     Roeske reported to Nicole Lovett, Director of Clinical Training and Program Development.

26.     Plaintiff worked from a home-office in Pennsylvania and managed territory in both Pennsylvania and New Jersey.

27.     In or about June 2022, Plaintiff was assigned to a new patient, Scott Eldridge (male).

28.     Following Plaintiff's assignment to Eldridge, he made sexually harassing comments and sent sexually harassing text messages to her.  By way of example, and without limitation:

   a.  Eldridge sent Plaintiff a text message with a photo of a woman with a seductive

look on her face and stated that the woman in the picture looked like Plaintiff.

b. Eldridge sent Plaintiff a text message stating: "So your [sic] not only a Hottie but funny also[.]"

c. Eldridge sent Plaintiff a text message stating: "I'm #1 and don't get bitchy with me woman[.]"

d. Eldridge sent Plaintiff a text message with a photo of a bouquet of red roses and stated: "Good morning beautiful woman!!!!!!"

e. Eldridge sent Plaintiff a text message stating: "Your spanking is getting very close!"

f. Eldridge sent Plaintiff a text message stating: "I don't know if I said it but you are one of the most beautiful, kind-hearted, and caring people I have ever known and one tough ass bytch to deal with me !!!"

g. Eldridge sent Plaintiff a text message with a photo of a scantily-clad woman with a seductive look on her face.

h. Eldridge sent Plaintiff a text message stating: "Just call me woman[.]"

i. Eldridge sent Plaintiff a text message stating that no one else was helping him except for Plaintiff and: "I love u 4 that[.]"

j. Eldridge sent Plaintiff a text message stating: "Good morning hot stuff !!!!!"

k. Eldridge asked Plaintiff to "spank" him.

l. Eldridge commented that Plaintiff was due for her "spanking."

m. Eldridge asked Plaintiff for selfies with him. Plaintiff refused.

n. Eldridge commented that he needed a selfie from Plaintiff so he knew what to daydream about.

      o. Eldridge commented that he was going to flip out and did not care if Plaintiff's "handicapped ass" was sitting there.

29. In meetings and phone calls with Walker, Roeske, and Jean Marchant, Human Resources, Plaintiff complained of the sexually harassing comments and text messages made by Eldridge.

30. In response to one such complaint, Walker asked Plaintiff what she was wearing to her appointments with Eldridge.

31. Plaintiff stated that she was offended by Walker's question, as she had not been wearing or doing anything inappropriate during her visits with Eldridge.

32. Walker instructed Plaintiff to continue working with Eldridge.

33. Thereafter, Plaintiff repeatedly requested to be removed from Eldridge's account.

34. Walker stated that she would see what she could do.

35. In or about September 2022, in a meeting with Lisa Olson, Insurance Adjuster, Plaintiff again complained of the ongoing sexual harassment from Eldridge.

36. In response, Plaintiff was told to handle the situation as best as she could.

37. In or about September 2022, Plaintiff requested to be removed from covering patients in New Jersey, as driving long distances to New Jersey was difficult for her due to her disability.

38. Walker told Plaintiff that she would not assign her any additional cases in New Jersey, but did not remove her from cases she was already handling in New Jersey.

39. On October 7, 2022, Plaintiff forwarded to Walker inappropriate the inappropriate and sexually harassing text messages that she has received from Eldridge.

40. On or about October 11, 2022, Walker told Plaintiff that she was no longer required

to work with Eldridge, and that she would be removed from his case.

41. On November 16, 2022, in a text message to Walker, Plaintiff explained that Eldridge was continuing to send her text messages.

42. Walker asked Plaintiff to send her the text messages from Eldridge, which Plaintiff did.

43. On December 9, 2022, in a meeting with Walker, Lovett, Roeske, and Rhoda McVeigh, Human Resources, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP") for alleged poor job performance.

44. Plaintiff's PIP was scheduled to last ninety (90) days.

45. McVeigh commented that she was surprised to be giving Plaintiff this PIP because she had only heard good things about Plaintiff.

46. After being placed on the PIP, Plaintiff stated that she planned to file a complaint regarding how Defendant handled her complaints about Eldridge's sexual comments and conduct toward her.

47. Lovett and Roeske told Plaintiff to send her complaint to Human Resources.

48. On December 13, 2022, in an email to Walker, Lovett, and Roeske, Plaintiff submitted a rebuttal to the PIP.

49. On December 14, 2022, in a meeting with Walker, Lovett, and Roeske, Defendant issued Plaintiff a Final Written Warning for alleged improper conduct and poor job performance.

50. Plaintiff signed the Final Written Warning and noted on the document that she did not agree with it.

51. After being placed on a Final Written Warning, Plaintiff stated that she would be filing a complaint regarding the ongoing sexual harassment that she experienced from Eldridge,

Defendant's failure to remedy the same, and the ensuring retaliation that she suffered for having raised complaints about Eldridge in the first place.

52. Lovett and Roeske told Plaintiff that they would follow up with Human Resources regarding these issues.

53. During a December 22 phone call between Plaintiff and McVeigh, Plaintiff stated that Defendant had set her up to fail by piling on substantially more assignments and travel than was feasible to complete in the timeframe provided.

54. McVeigh commented that it sounded like Plaintiff was not physically capable of doing her job any longer.

55. In response, Plaintiff objected, and stated that she was fully capable of doing her job, and that no one who was assigned what she had been assigned would have been able to complete everything on time. McVeigh stated that she did not see Plaintiff's work and assignments slowing down, so she would check as to whether she could get her a separation package.

56. On December 22, 2022, following the above, in a phone call with Lovett, Roeske, and McVeigh, Defendant terminated Plaintiff's employment, effective immediately, alleging poor job performance.

57. Plaintiff was the only employee reporting to Walker who was terminated effective December 22, 2022.

58. The harassing and discriminatory treatment to which Plaintiff was subjected, as set forth above, was sufficiently severe and/or pervasive such that a reasonable person in Plaintiff's position would have found the terms and conditions of employment to have been altered and the work environment created as a result thereof to be hostile and abusive.

59. The harassing and discriminatory treatment to which Plaintiff was subjected, as set

8

forth above, was sufficiently severe and/or pervasive such that Plaintiff in fact believed the terms and conditions of her employment had changed and that the work environment created as a result thereof had become hostile and abusive.

60. Plaintiff's sex (female), her disability (including her recorded history thereof and Defendant's perception of her as a disabled person), her need for reasonable accommodations related to her disability, her complaints about Eldridge's sexually harassing conduct, and her complaints about the ensuing retaliation to which she was subjected for raising those complaints were each substantial, motivating, and/or determinative factors in Defendants' discriminatory and retaliatory treatment of her, including allowing her to be subjected to hostile work environment, placing her on a PIP, placing her on a Final Written Warning, and terminating her employment.

61. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – Title VII

62. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

63. By committing the foregoing acts of discrimination and retaliation, Defendants have violated Title VII.

64. Defendants acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and their conduct warrants the imposition of punitive damages.

65. As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

66. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

67. No previous application has been made for the relief requested herein.

## **COUNT II - ADA**

68. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

69. At all relevant times, Plaintiff had a "disability" that substantially limited one or more major life activities and/or had a record of a "disability" and/or was regarded as "disabled" by Defendants, as defined by and within the meaning of the statutes which form the basis of this matter.

70. At all relevant times, Plaintiff was qualified to perform the essential functions of her job, with or without reasonable accommodation.

71. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

72. Defendants acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby warranting the imposition of punitive damages.

73. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

74. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

75. No previous application has been made for the relief requested herein.

## COUNT II – LAD

76. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the LAD.

77. At all relevant times, Plaintiff was "disabled" within the meaning of the LAD.

78. At all relevant times, Plaintiff had a recorded history of a disability of which Defendants were aware.

79. At all relevant times, Defendants regarded Plaintiff as a disabled individual.

80. As a direct and proximate result of Defendants' violations of the LAD, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

81. Members of Defendants' upper management were directly involved in and/or willfully indifferent to the discrimination and retaliation set forth herein, and its conduct was especially egregious, thus warranting the imposition of punitive damages.

82. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

83. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the ADA;

(c) declaring the acts and practices complained of herein to be in violation of the LAD.

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(f) awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(h) awarding punitive damages to Plaintiff under Title VII, the ADA, and the LAD;

(i) awarding Plaintiff such other damages and relief as is appropriate under the statutes that form the basis of this matter

(j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(k) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

<strong>CONSOLE MATTIACCI LAW LLC</strong>

Dated: \_\_\_\_\_          By:     <u>*/s/Daniel S. Orlow, Esq.*</u>
                                  Daniel S. Orlow, Esquire
                                  110 Marter Avenue, Suite 502
                                  Moorestown, NJ 08057
                                  Attorneys for Plaintiff
                                  Dianne Prosseda